Our fifth case of the morning is in Appeal No. 24-1941, the United States v. Dan Waeckerle, Waeckerle. Mr. Waeckerle's counsel is going to appear, yes, by video. Is it Mr. Unyell? It's Yangle, actually, Your Honor. Yangle, I'm sorry. It's nice to see you. Can you see and hear us okay in the courtroom? Yes, Your Honor. Okay. Ms. Burns, it's nice to see you. She's in the courtroom here. Whenever you're ready, you may proceed. Thank you very much, Your Honors. May it please the Court, my name is Dan Yangle, and I am court-appointed counsel for the appellant Dan Waeckerle. I plan to start my argument with the excusal of Juror No. 10 and the shackles point, as those points could secure my client a new trial if he prevails. Regarding the excusal of Juror No. 10, to determine if a juror is disqualified after deliberations begin, a court must consider the timing of the replacement, the reason for the replacement, and the length of potential delay by refusing to excuse a juror. To disqualify a juror after deliberations begin, the trial must be one of truly epic proportions in terms of length, scope, and expense to both sides, which was not the case here. Good reasons for replacement are things like jurors who are intoxicated, inattentive, unable to understand, or are dishonest. A juror who might need to be gone for a day or less is not something that renders them unable to perform or disqualified from service under the rule. The delay in this case that the government is alleging in their brief was this could have caused a three-day delay if this juror was excused. I think that's exaggeration in this situation. What we have is, we have a juror that Thursday evening the, the court was recessing for the day and for the first time the court is, is told that we have a juror that needs to attend a funeral the next morning. And at that point, there is a discussion, defense counsel object to, objected to the juror being removed, but there was never any follow-up with respect to this juror if this nine o'clock funeral was just going to be an hour or two and then the juror could have come back later in the day. So, so nothing was ever discussed with respect to that juror. So, the judge made a decision that that juror should be excused over the objection of the defense. There was multiple options that the court could have gone with in this particular situation. It wasn't, it was towards the end of the day, but if the court wanted to try to resolve the case and finish deliberations on that Thursday, the court could have, the court hadn't excused the juror yet. The court could have put that a juror in a situation. Mr. Yango. Yes. I, I take your point that a lot of the cases have much more extreme fact patterns about replacement. Do we have a rule about what a district court must solicit from a juror before deciding the juror can be replaced? There, the rule, Your Honor, is, is 24C, but, but it's, it's not super detailed. It's, it's whether they're unable to perform or are they disqualified. And so, there isn't any clear-cut guidance. And so, in this particular situation, you know, it's a determination that the legal standard is an abuse of discretion from the judge. That's a, that's a, I, perhaps I should have been clear. That's what, that's what I'm asking you. Do we have something, can you point to us, and then we should probably move on. We have some other big issues here. Something that absolutely shows us that this district court abused her discretion. I think, I think the case, it did abuse her discretion, Your Honor, when we get into the second piece of the puzzle, which is the, which is the shackles issue. With, with respect to the two alternates. So, the two alternates, there were two different exposures to the defendant when he was in shackles. And, and so, at two different times, and so there was never any clarification with respect to, to whether he was in shackles or not. We requested a record, the defense requested a record in that particular situation, and, and the court denied. The court, there is case law that talks about the court should question jurors to try to find out the issue of shackles, what they saw. We requested that, the court denied that. So the prejudice of the, to the defendant, the biggest prejudice, Your Honor, is under the reconstituted jury. Initially, the jury is deliberating for about six hours with the excused juror. And, and so, then there's a, the reconstituted juror with this juror that we believe saw the defendant in shackles, it was less than half the time that they deliberated. So they're supposed to restart their deliberation anew. Well, if they did almost six hours of deliberation, that's clearly prejudicial, and this new juror comes in and they only do three, they didn't restart it anew. So he was, he was prejudiced with respect to the deliberation. The secondary piece of the prejudice was clearly if, if he was in shackles, and they saw that he was in shackles, there's some case law that says it's presumed if somebody's in shackles that there is some prejudice. And those are some of the cases that we cited, excuse me. And so that's, that's the secondary issue. And then we believe the defense was also prejudiced by the judge not inquiring further of the juror that she excused as to her ability to come back and, and to be there Friday afternoon or some other time, as well as the juror that was getting on as to whether there was, there was a shackles issue. So, so that's where we believe that those two points interrelate to establish the prejudice with respect to the shackles and, and why this excusal of the juror was, was inappropriate. So with respect to the other point is, is the sufficiency of the evidence. With respect to the sufficiency of the evidence, the standard of review and that there's, there's kind of a difference of opinion with respect to the standard of review, but our position is because this is a obscenity issue. The standard of review requires the court to independently determine whether the material is obscene because obscenity implicates the First Amendment and is a question of constitutional law. And so this is a more lenient standard for the defense or for the appellant than a normal sufficiency of the evidence claim. And so, in this particular case, what we have is, and the reason we raised this claim is the jury instruction clearly lays out that the court has to look at the material or that the juror had to, jurors had to evaluate from the material, which is the images or videos, which there, there weren't any in this particular case and determine whether there was sufficient evidence. But our position is because they, they did not look at that material and, and they couldn't look at that material because it was never recovered, that he couldn't be convicted of, of this case and the court can't evaluate whether this material is obscene either. Are you saying that both would require, both of those charges would have required the images to have been submitted into evidence? Correct, Your Honor. With those two charges. Now, if you look at the third charge, we didn't raise that point with respect to the third charge because the third charge doesn't talk about obscenity. It doesn't have the definition of obscenity in the jury instructions. And so, but, but the, the first and the second charge do. And so that's why the images and the videos are important. It doesn't mean the defendant can't be convicted of some misconduct based on this type of offense. What element of the criminal offense would the videos have satisfied? The videos, it was the obscenity element that's, that's, that's in there in, in the elements in the jury instruction. In the jury instructions that the information is obscene? Yeah, it says that material in count one, it says the material is or contain an obscene visual depiction of a minor engaging in sexually explicit conduct. And so that's in count one. And then in count two, it's, there has to be a determination that the picture of a penis is obscene. And so then the definition of obscenity was, was in the jury instruction. And so that was, that was laid out. And so our submission is the law requires that that be evaluated. The law requires that that material be looked at under the jury instruction. And it was not. So I see my time is, is coming closer to an end. So I'd like to revert, reserve any rest of my time for rebuttal, if I may. Very well, Mr. Daniel, no problem. Thank you. Ms. Burns. May it please the court, Allie Burns on behalf of the United States. I will start kind of in the inverse of the defense's arguments. So first, the material at issue as to counts one and two were obscene. The jury was able to make that finding. The court can also make that finding based on the evidence. That's a fact question, right? Is whether or not the images are obscene? Yes. All right. And so you said that the, the judge could have made that determination. Sorry, the jury and in the court can make that determination under the defense's argument is that the court has to make that independent evaluation under the First Amendment analysis. And the government's position is, is the evidence within the record allows the court to do that if necessary. Do we have any case law across the country, particularly 1407, where that charge has been upheld with no images and no video? So, Your Honor, I think in United States v. William, which is a Supreme Court case that's dealing with solicitation. I am talking about 1407. Okay. That's a slippery slope. So let's go back to 1407. Have we any cases in this country where there's been a conviction with 1407? Without the image being recovered itself, I do not, I could not point the court to a case on that. I apologize. I couldn't find any either. And the reason why it's interesting that this charge in particular has never been charged as far as a conviction in this country is because one of the elements under our jury instructions is the finding that transferring of obscene material, right? The factual question has to be a jury determination that the information is obscene. And so we do have evidence from the Supreme Court when looking particularly, answering the Miller question of obscenity, that a description is enough for probable cause when you are charging a particular image as obscene. And so now that we're at the heightened level of standard beyond a reasonable doubt, I think it's interesting that we were unable to identify any case law where the obscenity beyond a reasonable doubt is determined by a description. Yes, and Your Honor, I think in this case, the reason that it is permitted is unlike a charge like some of the pornography-specific, child pornography-specific charges where they use the term image. They use the term video. In this, it is matter, obscene matter, and it's much broader, so it includes written works. It can include other things. So what was charged as the obscene material? The visual depiction of a minor. The visual depiction of a minor. So the matter here was the visual depiction of a minor?  And so what was the factual, I guess, evidence that supported a visual depiction of a minor? Oh, and actually, Your Honor, I apologize. It was actually in the count to its picture of a penis. That's what I thought. Yes, I apologize. I misspoke there. So it was a picture of a penis. And in this case, the evidence that we had, I would point— Now, we do have some Seventh Circuit case law that says pictures of genitalia. In particular, there's been a case that says a photograph of a penis by itself is not obscene. Correct. But the evidence in this case, and there's case law supporting this, that the victim testified at trial for two days. She was cross-examined at length. She testified specifically that it was a picture of an erect male penis. It was white. She gave descriptions about it. So there was that evidence. There were text messages that I think are also very corroborative of that. So I included those in my brief. Defendant states, can you get a picture without getting caught? He sends an image that, of course, is not recovered because it was deleted by admission by both parties. But it shows that a JPEG was sent. And the victim responded, hot, I want it inside of me. And the defendant responded, yeah, question mark. And then when the defendant was interviewed, this was a recorded interview, he admits he sent a picture of a penis. Now, he minimizes. He says it wasn't actually mine. I just sent this picture otherwise. So in this case, there is very specific evidence for the jury to make that conclusion, to determine whether or not this picture in the context to the defendant is obscene because of the victim being a minor as well and the victim also having a familial relationship. The defendant was friends with her mom, and that is how they came into contact with each other. So I think in this case, there was— So we have three pieces of evidence. Correct. Defendant's admission and confession that the jury heard and was recorded, victim's testimony at length describing the image that was sent and deleted, as well as the text messages that were recovered showing that a photo was, in fact, sent. We just don't have the image itself. Within those chats, there's also— How were they able to make the Miller determination that the photograph of the erect penis was obscene? Or is the government suggesting today that an erect penis qualifies as obscenity? No. So I think that, you know, obviously there are clearly images that are protected and are not obscene under the Constitution, and, in fact, in this one, it is not. And I think they were able to make that determination because of the evidence of it being erect, which cases have noted that that is of note, the fact that it was to a minor that he knew was a minor, and because of the relationship. So I think if it was in the Miller case where they talk about specifically this written—the context of it, so it was sent to a sister who was a minor, those things were important. In all of those cases, though, the jury had the images in front of them to make that determination. I'm asking for the limiting principle for when there are no images, as far as the government being able to charge this particular— Sure. And, Your Honor, I would just—I understand that there's not a case that says that explicitly, but there are cases that allow, as the Court said, making probable cause and search warrants to allow descriptions. A different standard of proof. Absolutely, but I think the evidence here—the charge itself says obscene matter. The evidence presented—it does not require an image. It does not require a video. So what you charged here does matter. You charged a nonexistent photograph as the obscene matter. You did not charge the text messaging, and so we have to use the text messaging, what you're saying, and extrapolate that onto the nonexistent photograph to make the legal determination or the factual determination from the jury's standpoint that that image was obscene. No, Your Honor, I think you would use not just the text messages, even without the text messages. I mean, the fact that an image was sent, that is the text message. So I guess in that sense, yes, that shows that an image was sent. But the victim's description of that image, as well as the defendant's confession of what was in that image, I think is what the jury was able to rely on in reaching its conclusion that it was obscene. I understood your argument to be that under—it's 1470, right, that we're talking about? Yes, 1470. Under 1470 that there's no requirement for direct evidence. Correct. And that the charge, like other criminal charges, can be proved by circumstantial evidence. Correct. And that the question is, could any rational juror have reached that conclusion? Yes, that this was sufficient evidence based on the victim's testimony, the text messages that were recovered showing an image was sent, and then the defendant's confession as to what that text message contained, what that image contained. So in that context, his own acknowledgment was it was a photo of a penis that he sent to a minor. He knew she was 15 years old at the time. He knew that because he was friendly. So are you suggesting because the photograph was sent to a minor, that made it obscene? I think that's part of the work taken as a whole. I think that's part of the context. I know it was a different charge, but the United States v. Williams talks about that. And I think it was Williams where they talk about, if not it was Miller, where they talk about the context of it being sent to a sister who was a minor, and that's what was considered as part of the whole work, and when you're considering and making that obscenity decision. So, yes, I think that that is permitted because, again, obscene matter, it differs from the child pornography statutes where they're very specific about images or visual depiction. To just briefly address the defendant's arguments as to the juror's issue, I would just note first for the legitimate basis of excusing a juror, the court did make a record. Of course, hindsight couldn't have been a lengthier record, of course, but the court did make a record of a funeral. It was a Friday, and that would then require a delay to go back as long as the trial was Friday. Well, she didn't ask how long the juror would have been gone, whether the funeral would have just been an hour. She would have been back. I mean, shouldn't we require more? Should the standard be higher? She just dismissed her for a scheduling conflict. Your Honor, it's an abuse of discretion, and the case law talks about a legitimate basis for removal, and the court found that this funeral was a legitimate basis for removal and replacement. I would note that – oh, I see, I'm out of time. May I finish? You can finish. I would just note one thing that I wanted to correct. The defendant's reply brief states that once an alternate was added, they only deliberated for 1-1⁄2 hours. That's incorrect. It was 2-1⁄2 hours, just over 2-1⁄2 hours on that second day before they reached their verdict. So I did want to correct that, and I think based on the abuse of discretion, the court did not abuse their discretion in either of those juror issues. Unless there are any more questions, I'd ask the court to affirm. Thank you. Okay, very well, Ms. Burns. Mr. Yangel, you had some rebuttal time left. Thank you, Your Honor. Just with response to the – with the correction of the brief, that is correct. The jury did deliberate the second time 2-1⁄2 hours. The initial deliberation was almost 6 hours, so it was significantly less. With respect to the issue that Judge Pryor brought up in evaluating the material, I think it goes back to the Miller case that talks about – all of these Supreme Court cases talk about that the court has to evaluate the materials, the images, and so that's what has to happen in this particular case. The prosecutor is trying to extrapolate into these text messages and all these other things. Those are different crimes. The real question is the material. Did these images – were they obscene? And under the jury instruction, the jury instruction requires that it lays out that Miller text, and it was not satisfied, and the court has the ability to independently review that. But realistically, our position is that the court's opening up the floodgates for more charges under this statute charging it this way when it's never been charged before. If it's never been charged before, that's because this isn't the appropriate charge and the defendant should be acquitted of the charges involving obscenity. That's all I would have, Your Honors. Thank you very much for the time. You're quite welcome. Mr. Daniel, I see here you were court appointed, correct? Yes, Your Honor. You have the appreciation of the court for your representation of Mr. Rackerley, and he should know he was well represented on appeal, and we thank you very much. Ms. Burns, thanks to the government as well. Thank you very much, Your Honor. Thank you.